

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-16-2005

# Govt of VI v. Fahie

Precedential or Non-Precedential: Precedential

Docket No. 04-1567

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Govt of VI v. Fahie" (2005). *2005 Decisions.* Paper 603.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/603

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-1567
_____

GOVERNMENT OF THE VIRGIN ISLANDS,

v.

JAREEM FAHIE

Appellant,
_____

On appeal from the District Court of the Virgin Islands,
Appellate Division, Division of St. Thomas and St. John

District Court Judges: Raymond L. Finch, Thomas K. Moore,
and Maria M. Cabret
(Dist. Ct. Crim. Appeal No. 01-cr-00324)

_____

Argued December 14, 2004
BEFORE: SLOVITER, FUENTES, and GREENBERG,
Circuit Judges

_____

(Opinion Filed: August 16, 2005)

_____
Charles S. Russell, Jr. (Argued)
Moore, Dodson, & Russell
P.O. Box 310, EGS 14A Norre Gade
Charlotte Amalie, St. Thomas
United States Virgin Island, 00804

ATTORNEY FOR APPELLANT

Richard S. Davis (Argued)
Office of Attorney General of Virgin Islands
Department of Justice
34-38 Kronprindsens Gade, GERS Building, 2nd Floor
Charlotte, Amalie, St. Thomas
United States Virgin Islands 00802

ATTORNEY FOR APPELLEE

_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge.

This appeal concerns when, if ever, dismissal with prejudice is an appropriate remedy for a violation of Brady v.

2

Maryland, 373 U.S. 83 (1963). The Territorial Court of the Virgin Islands dismissed a charge against Defendant-Appellant Jareem Fahie for possession of an unlicensed firearm after finding that the government failed to disclose a firearms trace summary in violation of Brady and Federal Rule of Criminal Procedure 16(a)(1)(F). The District Court of the Virgin Islands, Appellate Division, reversed, concluding that, although the government had violated its obligation under Brady, the Territorial Court erred in dismissing the case with prejudice. Because we conclude that dismissal with prejudice is appropriate only under exceptional circumstances not present here, we will affirm the judgment of the Appellate Division.

## I. Facts and Procedural History

On the evening of July 8, 2001, Jareem Fahie was shot while sitting in his mother's car. Although he sustained numerous gunshot wounds, he was able to drive himself to the hospital where he was interviewed by a Virgin Islands police officer. Fahie informed the officer that he had dropped off two friends and was in the vicinity of a local hotel when a passenger from another car exited his car, approached Fahie and shot him. When asked if the car parked outside the hospital was his, Fahie told the officer that it was. When the officer went out to search the car for evidence of the shooting, she observed part of a sawed-off shotgun, about two-feet long, sticking out of a black nylon bag in the backseat. She reentered the hospital to ask Fahie if he had a license for the weapon; when he responded that he did not, the officer arrested Fahie for possession of an unlicensed weapon.

3

Fahie was charged with possession of an unlicensed firearm (the sawed-off shotgun) in violation of 14 V.I.C. § 2253(a). He pled not guilty and the case went to trial in the Territorial Court on October 24, 2001. At trial, Detective David Monoson was called to testify as to the results of a test firing of the weapon. In the course of cross-examination, Monoson revealed that he had run a trace of the gun based on its serial number through the Bureau of Alcohol, Tobacco, and Firearms and had received a report (the "ATF Report") over three months before the trial that contained the name of the gun's registered owner, an individual living in Virginia. According to the ATF Report, the gun had not been reported stolen. Defense counsel immediately objected and argued that the ATF Report was exculpatory, material evidence that had been withheld in violation of Brady[1] and Rule 16(a)(1)(F)[2]. The government

---

[1]In Brady, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." Id. at 87.

[2]Rule 16(a)(1)(F) provides:

Upon a defendant's request, the government must permit a defendant to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment if: (i) the item is within the government's possession, custody, or control; (ii) the attorney for the government knows--or through due diligence could know--that the item exists; and (iii)

4

argued that the ATF Report was not <u>Brady</u> material and was exempt from discovery under Rule 16(a)(2).[3] In an oral opinion, the trial court held that the information relating to the gun ownership constituted <u>Brady</u> material, and that nondisclosure prejudiced Fahie's due process rights. The trial court also ruled that nondisclosure was a violation of Rule 16(a)(1)(F), which requires, upon request, disclosure to the defendant of certain "Reports of Examinations and Tests." The Government filed a timely appeal in the Appellate Division of the District Court.

The Appellate Division affirmed the trial court's ruling that withholding of the ATF Report constituted a <u>Brady</u> violation. However, the Appellate Division disagreed with the trial court that dismissal with prejudice was a proper sanction for the <u>Brady</u> violation, and thus reversed the trial court on that issue. Based on this ruling, the Appellate Division determined that the question whether dismissal was an appropriate sanction for a Rule 16(a)(1)(F) violation was moot. Nonetheless, the Appellate Division went on to decide that the trial court's dismissal based on the Rule 16 violation was also an abuse of

_____

the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial.

[3]Rule 16(a)(2) exempts from disclosure "reports, memoranda or other internal government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case."

discretion. Finally, the Appellate Division rejected Fahie's motion to dismiss on Double Jeopardy grounds.

On appeal, Fahie argues that dismissal was an appropriate remedy for either the Brady violation or the Rule 16(a)(1)(F) violation. The Government argues that there was no Brady violation and that the firearms trace summary was exempt from disclosure under Rule 16(a)(2); it also argues that dismissal with prejudice was, in any event, an improper remedy for either violation.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction over the Government's appeal pursuant to 48 U.S.C. § 1493. We exercise jurisdiction over this appeal under 28 U.S.C. § 1291 and 48 U.S.C. § 1613.

In reviewing a trial court's remedy for an alleged Brady violation, we review conclusions of law de novo and review any findings of fact, where appropriate, for clear error. See United States v. Thornton, 1 F.3d 149, 158 (3d Cir. 1993) (citing United States v. Perdomo, 929 F.2d 967, 969 (3d Cir.1991)).

## III. Remedy for Brady Violation

### A. Legal Background

As noted previously, the Supreme Court held in Brady that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence

6

is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The issue we must determine is when, if ever, dismissal with prejudice is an appropriate remedy for a <u>Brady</u> violation.[4] Fahie argues that dismissal is an appropriate remedy for due process violations where the defendant demonstrates prejudice or a substantial threat of prejudice. The Government contends that dismissal of a case during trial violates the separation of powers that gives only the prosecutor the right to try the case.

We have not yet decided when, if ever, dismissal with prejudice is a proper response to a <u>Brady</u> violation, or if retrial is the most severe remedy available. Nor has the Supreme Court directly addressed the issue. While the Court has assumed that <u>Brady</u> violations that have affected the judgment of a jury normally will be remedied by a new trial, it has left open the possibility of barring retrial in response to particularly egregious due process violations. <u>Compare</u> <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972) ("A new trial is required if [the <u>Brady</u> violation] could ...in any reasonable likelihood have affected the judgment of the jury."); <u>United States v. Russell</u>, 411 U.S. 423, 431-32 (1973) ("[W]e may some day be presented with a situation in which the conduct of law

---

[4]The Government contends that there was no <u>Brady</u> violation in this case because the ATF Report was not material. We have jurisdiction to consider the question under 28 U.S.C. § 1291 and 48 U.S.C. § 1613. For purposes of our analysis, we will assume without deciding that the Appellate Division correctly held that there had been a <u>Brady</u> violation.

enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction."). We too have left open the possibility that "the government's conduct in withholding Brady materials could . . . be sufficiently egregious to bar prosecution of a defendant on due process grounds." United States v. Coleman, 862 F.2d 455, 466 n.8 (3d Cir. 1988).

In deciding when dismissal might be appropriate, we find instructive the Supreme Court's decision in United States v. Morrison, which discussed whether dismissal was proper in a case where prosecutors attempted to deprive a defendant of her right to an attorney. 449 U.S. 361 (1981). Because their attempt failed, there was no prejudice to the defendant. Id. After discussing a number of cases involving violations of defendants' constitutional right to counsel, the Supreme Court in Morrison observed that "[n]one of these deprivations . . . resulted in the dismissal of the indictment. Rather, the conviction in each case was reversed and the Government was free to proceed with a new trial." Id. at 365. The Court discussed the appropriate remedy for a pretrial violation of defendant's rights as follows:

> [W]hen before trial but after the institution of adversary proceedings, the prosecution has improperly obtained incriminating information from the defendant in the absence of his counsel, the remedy characteristically imposed is not to dismiss the indictment but to suppress the evidence or to order a new trial if the evidence has been wrongfully admitted and the defendant convicted . . . [A]bsent demonstrable prejudice, or substantial

8

> threat thereof, dismissal of the indictment is plainly
> inappropriate, even though the violation may have been
> deliberate.

Id. Thus, the Supreme Court has expressed a preference for suppression of evidence or retrial as a more appropriate remedy for a pre-trial constitutional violation. Id. In Morrison, however, because there was no prejudice – indeed, not even a "claim of any discernible taint" – the Court determined that "even the traditional remedies were beside the point." Id. at 365 n.2. Morrison therefore clearly precludes dismissal absent a showing of prejudice to the defendant. Id. at 365; see also Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988) (holding that an indictment should be dismissed for errors in grand jury proceedings only if they prejudiced the defendants).

Morrison also teaches that the intentional character of the government's misconduct affects the appropriate remedy.[5] The

---

[5] In United States v. Mitchell, we held that while "as a legal matter, the question of good faith versus bad faith is a distinction without a difference in the Brady context," "the existence of bad faith on the part of the prosecution is probative of materiality because it is 'doubtful that any prosecutor would in bad faith act to suppress evidence unless he or she believed it could affect the outcome of the trial.'" 365 F.3d 215, 255 (3d Cir. 2004) (quoting United States v. Jackson, 780 F.2d 1305, 1311 n. 4 (7th Cir. 1986)). We believe that bad faith may be of additional relevance in the context of choosing a remedy for a Brady violation.

Court noted, for example, that a "pattern of recurring violations by investigative officers . . . might warrant the imposition of a more extreme remedy in order to deter further lawlessness." Morrison , 449 U.S. at 365 n.2. This statement suggests that the Court was concerned with both prejudice and deterrence, and that when both of those factors call for a particularly harsh sanction, dismissal – the harshest available sanction for a Brady violation – may be proper. See United States v. Isgro, 974 F.2d 1091, 1097 (9th Cir. 1992) ("Dismissal of an indictment with prejudice is the most severe sanction possible.").

Other cases demonstrate similar attention to prejudice and willful misconduct. In United States v. Marion, the Supreme Court reversed a dismissal of an indictment where defendant failed to show either that "actual prejudice" resulted from the government's pre-indictment delay or "that the Government intentionally delayed to gain some tactical advantage over appellees or to harass them." 404 U.S. 307, 325 (1971). And, in Maine v. Moulton, the Court noted the relevance of willful misconduct when it observed that incriminating statements relating to pending charges may be held inadmissible as to those charges "if, in obtaining this evidence, the State violated the Sixth Amendment by knowingly circumventing the accused's right to the assistance of counsel." 474 U.S. 159, 180 (1985). Thus, the Supreme Court has declined to impose the harshest penalties for government misconduct where a defendant has not demonstrated that the misconduct was willful and resulted in actual prejudice.

In our own decisions addressing remedies for constitutional violations, we too have suggested that willfulness

10

and prejudice are important considerations. See United States v. Rosenfield, 780 F.2d 10, 11 (3d Cir. 1985) (holding that dismissal is warranted "only where the defendant is actually prejudiced . . . the challenged activity was something other than an isolated incident unmotivated by sinister ends or . . . misconduct challenged has become entrenched and flagrant"); United States v. Costanzo, 740 F.2d 251, 257 (3d Cir. 1984) (affirming refusal to dismiss indictment on grounds of a Sixth Amendment violation where "[n]one of the disclosures . . . were the product of intentional intrusion into the defense camp . . . or were accompanied by a showing of prejudice"). These decisions imply that a court fashioning a remedy for a Brady violation should take into account the particular character and consequences of the government's actions.

Some Courts of Appeals have remarked or implied that no harsher sanction than a new trial is ever available to remedy a Brady violation. See United States v. Mitchell, 164 F.3d 626 (4th Cir. 1998) (unpublished table decision); United States v. Davis, 578 F.2d 277, 280 (10th Cir. 1978); United States v. Evans, 888 F.2d 891, 897 n.5 (D.C. Cir. 1989). Others, however, have held or implied that dismissal may sometimes be appropriate. See, e.g., United States v. Lewis, 368 F.3d 1102, 1107 (9th Cir. 2004) ("Courts . . . can dismiss actions where government attorneys have willfully deceived the court an engaged in conduct utterly inconsistent with the orderly administration of justice.") (internal quotation omitted); see also United States v. Fletcher, 801 F.2d 1222, 1225 (10th Cir. 1986) ("Absent evidence of police or prosecutorial bad faith or misconduct, dismissal of an indictment is warranted only if the missing evidence possesses an exculpatory value that was

11

apparent before the evidence was destroyed."). Notably, in all jurisdictions, dismissal with prejudice is in practice a rare sanction for any constitutional violation.[6]

In light of the foregoing, we conclude that dismissal for a Brady violation may be appropriate in cases of deliberate misconduct because those cases call for penalties which are not only corrective but are also highly deterrent.[7] Deliberate misconduct is targeted for extra deterrence because we expect willful misbehavior to be the most effectively deterred by enhanced penalties. See Nat. Hockey League v. Met. Hockey

---

[6]Our research discloses no case where a federal appellate court upheld dismissal with prejudice as a remedy for a Brady violation. For an exceptional case in which a district court dismissed charges following a Brady violation, see United States v. Dollar, 25 F. Supp.2d 1320 (N.D. Ala. 1998). In Dollar, the government failed repeatedly to disclose undeniably probative documents. Id. at 1332. The District Court found that the government had "breached the duty of professionalism and candor owed to the court" and doubted "whether it [had] proceeded . . . in good faith." Id.

[7]Because a new trial cures completely any prejudice to a defendant from a Brady violation, prejudice alone cannot justify dismissal. See Morrison, 449 U.S. at 364 (observing that remedies should be narrowly tailored). For similar reasons, new evidence discovered after the close of trial, if from a neutral source, results only in a new trial. Only when there is willful misconduct will deterrence justify dismissal with prejudice.

12

Club, Inc., 427 U.S. 639, 643 (1976) ("[T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent").  While retrial is normally the most severe sanction available for a Brady violation, where a defendant can show both willful misconduct by the government, and prejudice, dismissal may be proper.[8]

## B. Application

We now apply the above standard to the facts of this case.  We note first that the record does not support a finding that the prosecutor knew that it was required to disclose the ATF Report, but intentionally withheld it.  The Territorial Court

---

[8]Although Fahie does not appeal his Double Jeopardy claim to this Court, we write in the margin to note that the Double Jeopardy Clause normally will not limit the range of remedies available for a Brady violation.  See Coleman, 862 F.2d at 458. If a defendant cannot show that dismissal is proper because the government withheld documents in bad faith or reckless disregard for the defendant's rights, he cannot show that retrial would violate the Double Jeopardy Clause on the grounds that the government intentionally triggered a mistrial by withholding documents.  See Oregon v. Kennedy, 456 U.S. 667, 676 (1982) (holding that to claim double jeopardy bar defendant must show "government conduct in question [was] intended to 'goad' the defendant into moving for a mistrial").

made no findings to that effect, and the District Court did not address the issue. From the record, it appears that the prosecutor was more misguided than calculating in her handling of the ATF Report. Detective Monoson testified that ATF supplied firearms trace reports to the Government on a routine basis and that the prosecutor was aware of the report because he had discussed it with her. But when defense counsel first objected, the prosecutor initially denied withholding anything, claiming that "the Government did turn over what it had." When the judge demanded the report and inquired further, the prosecutor responded "I don't know, Your Honor. I don't have it." After a brief recess, she produced the report ("we do have the information now, Your Honor. We just received the information."). From these facts, it appears that the prosecutor overlooked the significance of the ATF Report – perhaps because, under the Government's own theory that the gun was stolen, the original ownership, based on a purchase made 13 years prior in Virginia, was not obviously important.[9] Having failed to appreciate its significance to the defense, the prosecutor may have simply lost track of the report between the time it was produced, in late July, and the start of trial in October. While her error compromised Fahie's due process rights, we do not believe – nor is it alleged – that the prosecutor's misconduct was willful.

---

[9]That is not to take issue with the analyses of the Territorial Court and the Appellate Division, both of which concluded that knowledge of the original owner could have been helpful to Fahie in locating the true owner at the time of his arrest.

Although Fahie does not try to show that the prosecutor knew she was required to disclose the ATF Report but withheld it anyway, Fahie does attempt to establish a pattern of discovery abuse. A pattern of constitutional violations may indeed be used to show recklessness on the part of a prosecutor. See Sample v. Diecks, 885 F.2d 1099, 1117 (3d Cir. 1989) ("[T]he existence of a pattern of constitutional violations may provide a basis for implying deliberate indifference."); Farmer v. Brennan, 511 U.S. 825, 836 (1994) ("[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."); see also Morrison, 449 U.S. at 365 n.2 (noting that higher penalties may be warranted where there is a pattern of misconduct). Moreover, a constitutional violation that results from a reckless disregard for a defendant's constitutional rights constitutes willful misconduct. See Wehr v. Burroughs Corp., 619 F.2d 276, 282 (3d Cir. 1980) ("only three degrees of culpability are associated with the term 'willful': intentional, knowing, or reckless"); cf. United States v. Johnstone, 107 F.3d 200, 208-09 (3d Cir. 1997) (holding that "willful[ ]" in federal criminal civil rights statute, 18 U.S.C. § 242 "means either particular purpose or reckless disregard"); United States v. Frost, 999 F.2d 737, 743 (3d Cir. 1993) (holding that "in order to secure suppression of the fruits of [a search based on a misleading search warrant affidavit], a defendant must show . . . that bad faith or reckless disregard existed on the part of the affiant"); Polselli v. Nationwide Mut. Fire Ins. Co., 23 F.3d 747, 751 (3d Cir. 1994) (holding, in the insurance context, that "recklessness . . . can support a finding of bad faith"). Thus, reckless misconduct, if prejudicial, may sometimes warrant dismissal. Otherwise, a prosecutor who sustains an erroneous

15

view of her <u>Brady</u> obligations over time will be inadequately motivated to conform her understanding to the law.

In this case, however, Fahie fails to demonstrate a pattern of violations by which he can demonstrate reckless, and therefore willful, misconduct. Fahie points to the fact that during the suppression hearing, a Government witness represented that no fingerprint analysis had been conducted on the gun. Later, however, the Government supplemented its discovery with a July 9, 2001 memo indicating that a fingerprint test had been conducted but that it was inconclusive. Fahie also claims that because the Government failed to follow proper protocol in the handling of evidence, specifically, the gun, he could not do an independent fingerprint analysis. It appears that Fahie's allegations are not without merit, since the Territorial Court suppressed the fingerprint analysis upon Fahie's motion in limine. However, the events surrounding the fingerprint test appear to us to support the view that the prosecutor was at times disorganized, but not reckless.

Because Fahie cannot show willful misconduct, we need not address the question of prejudice in this case.[10] In the absence of any evidence of willful misconduct, dismissal with

---

[10]In order to find a <u>Brady</u> violation in the first place, a court must find that some prejudice ensued to the defendant. <u>See</u> <u>Stricker v. Greene</u>, 527 U.S. 263, 281-82 (1999). Only if a defendant has demonstrated that his rights were violated and that the violation was willful need a court again consider the degree of prejudice in fashioning an appropriate remedy.

16

prejudice was improper.

## IV. Dismissal under Supervisory Powers

The Territorial Court also dismissed the charges against Fahie under Rule 16(a)(1)(F).[11] The Appellate Division reversed, determining that dismissal with prejudice for an unintentional Rule 16 violation is an improper exercise of a court's supervisory powers.

We note first that, contrary to the Government's position, the failure to disclose the ATF Report was indeed a discovery violation. Fahie's counsel asked the prosecution for all evidence material to Fahie's defense in his blanket Brady request. The Government argues that the requirements of Rule 16(a)(1)(F) do not apply here because the exception to Rule 16 found in Rule 16(a)(2), regarding reports prepared in connection with a criminal investigation, applies to the ATF Report. Because the ATF Report was prepared for the Virgin Islands Police Department in response to the Department's request about a gun that it had seized, the government claims the trace report is exempted from disclosure.

---

[11]Having already concluded that dismissal was an improper remedy for a Brady violation, the District Court initially described this second issue as moot (but went on to discuss it). We disagree with that characterization, since the trial court's order of dismissal could be upheld independently on Rule 16 grounds.

17

The exception in Rule 16(a)(2) applies to work product. See United States v. Armstrong, 517 U.S. 456, 463 (1996) ("[u]nder Rule 16(a)(2), [a defendant] may not examine Government work product in connection with his case."). The ATF Report was not government work product of a type exempted from discovery. It did not contain "mental impressions, conclusions, opinions or legal theories concerning litigation of an attorney or other representative of a party." See In re Cendant Corp. Sec. Litig., 343 F.3d 658, 663 (3d Cir. 2003) (citing Fed. R. Civ. P. 26, Advisory Comm. Notes, 1970 Amendment). Rather, the ATF Report was a computer-generated printout from a government database maintained for broader purposes than the prosecution of Fahie. The federal employees who maintain the database and who generated the ATF Report are not agents of the Virgin Islands or its prosecutor. Nor did the ATF Report reveal any confidential information pertaining to the Government's prosecution strategy.

Finally, the contours of Rule 16's exceptions should be interpreted to minimize conflict with the government's constitutional disclosure obligations under Brady. See Ortiz v. Fibreboard Corp., 527 U.S. 815, 842 (1999) (adopting a "limiting construction" of Federal Rule of Civil Procedure 23(b)(1)(B) in part to avoid "serious constitutional concerns"); see also Edward DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council, 485 U.S. 568, 757 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.").

18

Since the Government was obligated to share the kind of objective fact evidence contained in the ATF Report with Fahie under the Sixth Amendment, we will not exempt the government from this obligation under Rule 16(a)(2) in the absence of language compelling a contrary result.

In light of the Government's discovery violation, we next decide whether the Territorial Court properly dismissed the charges against Fahie under its supervisory powers. A trial court need not rely on Brady to justify dismissal of an indictment as a remedy for improper prosecutorial conduct; it may also remedy Rule 16 discovery violations under its supervisory powers. See United States v. Restrepo, 930 F.2d 705, 712 (9th Cir. 1991) ("[D]ismissal of an indictment because of outrageous government conduct may be predicated on alternative grounds: a violation of due process [such as a Brady violation] or the court's supervisory powers."); see also United States v. Ross, 372 F.3d 1097, 1107 (9th Cir. 2004). The purposes underlying the use of courts' supervisory powers are broad and include implementing remedies for violations of recognized rights and remedies designed to deter illegal conduct. See United States v. Hasting, 461 U.S. 499, 505 (1983).

A trial court's remedy for a discovery violation under its supervisory powers is reviewed for abuse of discretion while factual findings upon which the decision was based are reviewed for clear error. See Restrepo, 930 F.2d at 712; see also Govn't of V.I. v. Blake, 118 F.3d 972, 978 (3d Cir. 1997) ("[T]he trial court sits in a unique position to evaluate . . . evidentiary and discovery questions, including the selection of

sanctions.").

This Court has held in the civil context that whether a trial court has abused its discretion in dismissing a case depends on the balance of six factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. See Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984). Those factors "should be weighed by the district courts in order to assure that the 'extreme' sanction of dismissal . . . is reserved for the instances in which it is justly merited." Id. at 870 (holding district court did not abuse its discretion when it dismissed case). Given the "societal interest in prosecuting criminal defendants to conclusion," it is especially important in the criminal context that a court applying sanctions for violation of Rule 16 carefully assess whether dismissal with prejudice is necessary to exact compliance with discovery obligations. Coleman, 862 F.2d 455. In particular, as discussed above, a court must look to both the need to undo prejudice resulting from a violation and the appropriate deterrent value of the sanction in each case.

Other courts have considered the question of when a court may dismiss an indictment under its supervisory powers. The Ninth Circuit has held that "[d]ismissal under the court's supervisory powers for prosecutorial misconduct requires (1) flagrant misbehavior and (2) substantial prejudice." United States v. Kearns, 5 F.3d 1251, 1253 (9th Cir. 1993). It has

20

suggested that prosecutorial conduct might satisfy those requirements even where it would fail to justify dismissal under Brady directly. See Ross, 372 F.3d at 1110; United States v. Barrera-Moreno, 951 F.2d 1089, 1091 (9th Cir. 1991). The Seventh Circuit has adopted a more restrictive approach, holding that a sanction under supervisory powers is only appropriate where the conviction could not have been obtained but for the failure to disclose exculpatory evidence. See United States v. Johnson, 26 F.3d 669, 683 (7th Cir. 1994). At least two other circuits instruct courts to balance a number of factors in their choice of a sanction, including "the reasons for the Government's delay in affording the required discovery, the extent of prejudice, if any, the defendant has suffered because of the delay, and the feasibility of curing such prejudice by granting a continuance or, if the jury has been sworn and the trial has begun, a recess." United States v. Euceda-Hernandez, 768 F.2d 1307, 1312 (11th Cir. 1985); see also United States v. Wicker, 848 F.2d 1059, 1061 (10th Cir. 1988). While we appreciate the importance of all these factors, we believe that, to merit the ultimate sanction of dismissal, a discovery violation in the criminal context must meet the two requirements of prejudice and willful misconduct, the same standard applicable to dismissal for a Brady violation. Accordingly, we do not expect that trial courts will dismiss cases under their supervisory powers that they could not dismiss under Brady itself.

Neither the trial court nor the Appellate Division systematically considered the factors relevant to a sanction for prosecutorial misconduct, and in particular, the two prerequisites to dismissal with prejudice. Nevertheless, since, as discussed in the context of a remedy for the Brady violation,

21

there has been no showing here of willful government misconduct, there was no basis for the trial court's conclusion that dismissal under its supervisory powers was necessary to effectively deter such conduct in the future. Prejudice to Fahie could be corrected with the lesser remedy of mistrial. Therefore, dismissal with prejudice for the government's Rule 16 violation was an abuse of discretion.

## VI. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.