NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1578
_____

UNITED STATES OF AMERICA

v.

STEPHEN LASHLEY, a/k/a Doe

Stephen Lashley,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 09-cr-00307-001)
District Judge:  Honorable Michael M. Baylson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 22, 2013

Before:  FUENTES, CHAGARES, and BARRY, *Circuit Judges*.

(Filed: May 1, 2013)
_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*:

In this appeal, we are asked to consider whether the District Court erred in

denying Stephen Lashley's motion to dismiss the indictment on the grounds of

prosecutorial misconduct, denying his motion to suppress the testimony of a warrant officer, and in sentencing Lashley. For the reasons that follow, we will affirm.

**I.**

Between November 2006 and June 2007, Lashley trafficked guns from South Carolina to Philadelphia with the help of Jason Mack. Two of those guns were recovered at Philadelphia crime scenes—inside of a car that had been used in a carjacking and on an individual who had used it to kill a Philadelphia police officer. Mack pleaded guilty to certain charges and agreed to cooperate. His plea agreement stated that the Government would move for a downward departure at Mack's sentencing for his cooperation, and that the Government would move for a sentence reduction through a Federal Rule of Criminal Procedure 35(b) motion if Mack continued cooperating after sentencing. After testifying before a grand jury, resulting in Lashley's indictment, Mack was sentenced to three years' imprisonment.

In December 2009, Lashley proceeded to trial on charges of illegal transportation of a firearm and possession of a firearm by a convicted felon. Prior to trial, the Government failed to produce Mack's plea agreement or reveal the possibility of a Government motion for a sentence reduction. The Government produced Mack's grand jury testimony, which acknowledged a cooperation agreement, and Mack testified at Lashley's trial to receiving a three-year sentence but did not mention any potential reduction for further cooperation.

During closing arguments, the Assistant U.S. Attorney bolstered the reliability of Mack's testimony, emphasizing that Mack had admitted to his unlawful acts, received a significant sentence due to it, and had nothing to gain from testifying. She argued:

> You have heard Jason Mack was charged with the illegal purchases by lying on forms of these guns, and he didn't get a slap on the wrist for it. And it's not like he's looking to benefit by virtue of his continued testimony to you. He's been sentenced to these offenses. He was sentenced to three years . . . . He could at this point come in and say, look, you know, I did it, I got caught, and the heck with all of you, I'm not talking about this anymore, but he did not do that. He came in and said I did it, I got caught, but there were other people . . . .

App. 630. The jury found Lashley guilty of both counts, and the District Court sentenced him to 120 months' imprisonment.

Nine days after trial, the prosecutor emailed a prosecutor in South Carolina responsible for Mack's case to inform him that "Mack fully complied with the terms of his cooperation guilty plea agreement by providing full and complete testimony at Lashley's trial," App. 235, and to ask whether anything was needed from her for Mack's sentence reduction. Mack's sentence was reduced to two years.

On appeal, Lashley's attorney discovered Mack's plea agreement and argued that the failure to produce it constituted a *Brady* violation, which was compounded by the prosecutor's statements during closing arguments. Instead of responding, the Government moved to be excused from filing an appellate brief, conceded its error in failing to disclose the plea agreement, and asked for a remand for a new trial. We granted the motion, vacated Lashley's conviction, and remanded for a new trial.

Prior to the retrial, Lashley sought dismissal of the indictment based on prosecutorial misconduct. During a hearing, the initial prosecutor testified that she had inadvertently not turned over Mack's plea agreement and not realized it until the appeal. She also testified that her statement that Mack would not receive any benefit from testifying was inaccurate, that she had forgotten the statement when later emailing the South Carolina prosecutor, and that she only realized the mistake on appeal. The District Court found that the prosecutor was "disorganized, but not reckless in failing to turn over the plea agreement." App. 241. It "credit[ed] her testimony that she was not thinking about this information during her closing argument, [but found] she should have, and [that] her focus on other facts does not excuse her omission in the consequential misrepresentation." App. 241-42. Having found the prosecutor's errors were "inadvertent," App. 242, the District Court held that dismissal was not warranted.

Prior to retrial, the District Court also denied Lashley's motion to suppress a warrant officer's testimony about his observations of Lashley's home at the time of his arrest. During Lashley's retrial, the District Court prohibited the Government from introducing new evidence and instructed the jury that it "should consider the fact that [Mack] received a benefit for testifying" and "should consider the testimony of Mack with great care and caution." App. 599. Lashley was convicted of both counts. During sentencing, the District Court enhanced based on the number of firearms and departed upward, imposing a 102-month sentence. It was 18 months less than his original sentence because "it would be very unfair to give Mr. Lashley a sentence longer than the one he had the first time," App. 715, and the District Court would not "penalize [Lashley] for

seeking a new trial, particularly under the circumstances of which the Government conceded error," App. 708. Lashley appealed.

## II.[1]

Lashley argues that the District Court erred in denying the motions to dismiss the indictment and to suppress the warrant officer's testimony and in sentencing him.

## A.

In reviewing a motion to dismiss an indictment, we exercise plenary review of the District Court's legal conclusions and review challenges to factual findings for clear error. *United States v. Nolan-Cooper*, 155 F.3d 221, 229 (3d Cir. 1998). After hearing testimony on the prosecutor's failure to turn over the plea agreement and statements during closing arguments, the District Court found that the errors were inadvertent, caused by disorganization and carelessness, and were not reckless. Under our precedent, "[w]hile retrial is normally the most severe sanction available for a *Brady* violation, where a defendant can show both willful misconduct by the government, and prejudice, dismissal may be proper." *Gov't of Virgin Islands v. Fahie*, 419 F.3d 249, 255 (3d Cir. 2005). We also held that "a constitutional violation that results from a reckless disregard for a defendant's constitutional rights constitutes willful misconduct. . . . Thus, reckless misconduct, if prejudicial, may sometimes warrant dismissal." *Id.* at 256. Indeed, "[a] pattern of constitutional violations may indeed be used to show recklessness." *Id.*

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

Here, the District Court found that the prosecutor's conduct did not rise to the level of recklessness, and we do not find any clear error in its fact-finding. Lashley argues that he suffered irremediable prejudice because he was unable to effectively cross-examine Mack. However, in addition to prejudice, dismissal under *Brady* requires a showing of a prosecutor's willful misconduct or a pattern of constitutional violations. *Id.* In *Fahie*, we held that while a prosecutor's failure to turn over a gun trace report constitute a due process violation, it did not warrant dismissal because the prosecutor was simply "misguided" and "overlooked the significance" of the report and did not intentionally withhold it. *Id.* at 255-56. Likewise here, the prosecutor's failure to turn over Mack's plea agreement and her comments during closing argument bolstering Mack's reliability based on having nothing to gain, followed days later by an email supporting a sentence reduction, also constitute a serious due process violation. Nevertheless, we cannot say that the District Court's finding that the errors were inadvertent was clearly erroneous, and as Lashley has failed to demonstrate "a pattern of violations by which he can demonstrate reckless, and therefore willful, misconduct," *id.* at 256, dismissal of the indictment is not warranted.

**B.**

Lashley's remaining challenges are meritless. He argues that an officer's testimony on his observations during Lashley's arrest should have been suppressed. We review a denial of a motion to suppress for "clear error as to the underlying factual findings and exercise[] plenary review of the District Court's application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002). The District Court

credited the officer's testimony that Lashley's mother and girlfriend had made inconsistent statements about Lashley, that he could hear a dog barking and other noises in the basement, that the officer was "scared," "surprised," and "alarmed" when Lashley first appeared, and that Lashley stood near an open door to the basement. App. 248. An officer stayed with Lashley and his mother and girlfriend, while other officers entered the basement to see if there were other individuals in the basement that might "pose a threat" to them. App. 249. While in the basement, the officer observed gun cases and ammunition. Having considered whether the officer articulated "facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene," *Maryland v. Buie*, 494 U.S. 325, 334 (1990), the District Court properly held that the search constituted a protective sweep. Because the protective sweep was designed to protect the officers and lasted no longer than necessary to dispel any reasonable suspicion of danger, we hold that the motion to suppress the officer's observations during the sweep was properly denied. *Id.* at 335.

Lashley also argues that the District Court erred at sentencing by considering unreliable evidence that Lashley was responsible for nine firearms. The District Court applied a four-level enhancement for nine firearms under U.S.S.G. § 2K2.1(b)(1)(B). We review a district court's factual findings for clear error. *United States v. Grier*, 475 F.3d 556, 561 (3d Cir. 2007). Over the defense's objection, the District Court credited a governmental report detailing an interview with an individual, Elmer Jordan, who stated that Lashley asked him to buy guns. Sentencing courts may consider hearsay evidence,

7

although it may have been inadmissible at trial, so long as it has "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a); *see also United States v. Paulino*, 996 F.2d 1541, 1547 (3d Cir. 1993). We find no clear error in the District Court's factual findings and uphold the District Court's application of the enhancement.

Finally, Lashley argues that the District Court erred by departing upward by 24 months. The District Court expressed its concern that Lashley's conduct occurred over a lengthy time period, brought guns back into Philadelphia, causing "untold havoc," App. 712, and resulted in a gun that was used to "to kill a police officer acting in the line of duty," App. 708, which were circumstances not adequately considered by the Sentencing Commission. Sentencing courts may depart upward both for "circumstances that the Commission may have not adequately taken into consideration in determining the applicable guideline range," U.S.S.G. § 5K2.0(a)(2)(A), and for circumstances resulting in a death. U.S.S.G. § 5K2.1. Because we hold that the District Court's basis for upwardly departing was valid, we must determine whether the extent of the departure was reasonable. *Williams v. United States*, 503 U.S. 193, 204 (1992). Here, the District Court discussed at length the reasons for the departure, including that the scheme occurred over a lengthy period, led to more guns in Philadelphia, and resulted in "a death of another human being," App. 714. Thus, we hold that the District Court's 24-month departure above the top of Lashley's Guideline range, while significant, was reasonable.

**III.**

For the reasons set forth above, we will affirm the District Court's judgment of conviction and sentence.