**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3130
_____

UNITED STATES OF AMERICA

v.

DR. MARYAM JAFARI,

Appellant

_____

Appeal from the United States District Court
for the District of New Jersey
(No. 2-12-cr-00475-001)
District Judge:  Honorable Claire C. Cecchi

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 17, 2016

Before:  CHAGARES, RESTREPO and VAN ANTWERPEN, Circuit Judges.

(Filed: May 2, 2016)
_____

OPINION[*]
_____

CHAGARES, Circuit Judge.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Defendant Maryam Jafari appeals from the judgment of conviction and sentence entered by the District Court on June 23, 2014.  On appeal, Jafari raises a number of issues:  (1) whether the District Court erred in denying her motion for a mistrial based on violations of Federal Rules of Evidence; (2) whether the District Court erred in denying her motion to dismiss the indictment despite violations of Brady v. Maryland, 373 U.S. 83 (1963); (3) whether the District Court erred in allowing the government to prosecute despite having obtained evidence in violation of the Health Insurance Portability and Accountability Act ("HIPAA"); and (4) whether the errors, when taken together, deprived Jafari of a fair trial.  For the reasons that follow, we will affirm.

I.

We write solely for the parties and therefore recite only the facts necessary to our disposition.  In December 2011, Jafari, a doctor practicing internal medicine in New Jersey, was arrested and charged with one count of conspiracy to violate the anti-kickback statute, in violation of 18 U.S.C. § 371, and two counts of receiving kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A).  The charges stemmed from Jafari's involvement in a conspiracy involving high-ranking personnel at Orange Community MRI ("OCM"), a diagnostic facility that provides MRIs, CT scans, and other medical tests at the request of referring physicians.  To increase their number of patients, members of OCM management devised a plan to pay cash payments to doctors, including Jafari, in return for referrals.

Jafari's first trial resulted in a mistrial.  At her second jury trial, the Government presented substantial evidence as to Jafari's role in the conspiracy.  The evidence

included the testimony of two OCM employees, Chirag Patel and Krunal Banker, who stated that they personally paid Jafari kickbacks for referrals. Patel testified that he delivered Jafari cash on approximately four occasions, beginning in mid-November 2010. See Appendix ("App.") 3853. Banker made two visits to Jafari on November 22, 2011 and December 6, 2011. App. 2945-57.

The Government also presented videotapes that were secretly recorded by Banker, acting as a Government confidential informant. In a videotape recording from their December 6 meeting, Jafari appeared to be accepting kickback payments from Banker. In that video, Banker tells Jafari that that month's cash payment is low because she referred only "four MRIs last month." Supplemental Appendix ("Supp. App.") 50. Jafari responds, "I will try to keep you very busy. . . . I will always try to keep you busy." Id. In a separate videotape recording of the November 22 meeting, Jafari is seen accepting an envelope. In that video, Banker outlines the cash payments included in the envelope for various months of MRI and CT scan referrals. See Supp. App. 43-44. In addition to this evidence of Jafari's involvement in the conspiracy, the Government provided witness testimony and video indicating the involvement of other doctors in the kickback scheme.

The Government also introduced photographs of envelopes that purportedly contained cash and were found in the trunk of Banker's car. The photographs were taken after federal agents approached Banker about his involvement in the kickback scheme,

3

and he agreed to cooperate. One of the envelopes in the trunk of his car had "Jaf" written on the front.[1]

Jafari's defense at trial was that the two payments she is shown accepting from Banker on the videotape were "thank you" payments from Patel for a completely unrelated matter,[2] and that she did not participate in the OCM kickback scheme. On February 4, 2014, a jury returned guilty verdicts on all counts. On June 12, 2014, the District Court sentenced Jafari to 21 months of imprisonment, and ordered her to pay a $45,000 fine and forfeit over $40,000. Jafari timely appealed.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291 to review a final decision of a district court.

When reviewing a motion to dismiss an indictment, we exercise plenary review of a district court's legal conclusions and review factual findings for clear error. United States v. Bergrin, 650 F.3d 257, 264 (3d Cir. 2011). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing body on the entire evidence

---

[1] In her brief, Jafari claims that a federal agent, rather than Banker, wrote "Jaf" on the front of the envelope. See Jafari Br. 11, 15. The Government claims that the label "Jaf" was written by Banker. See Gov't Br. 9. At trial, Banker testified that he, and not the federal agent, wrote "Jaf" on the envelope. See Gov't Br. 32 n.16; App. 2848, 2861-62.

[2] Specifically, Patel was an owner of the American Institute for Medical Science and Education ("AIMS"), a private vocational school offering healthcare certifications for medical technicians. Jafari claims that Patel sought Jafari's assistance in affiliating AIMS with Clara Maas Hospital, where Jafari's office was located. See Jafari Br. 8. Thus, Jafari's defense at trial was that any payments she received from OCM employees were with respect to that arrangement.

4

is left with the definite and firm conviction that a mistake has been committed." Id. (quotation marks and alteration marks omitted).

We review challenges to the admission of evidence and denials of mistrial motions for abuse of discretion. See United States v. Christie, 624 F.3d 558, 567 (3d Cir. 2010) (admission of evidence); United States v. Riley, 621 F.3d 312, 335-36 (3d Cir. 2010) (denial of mistrial). Factual findings are reviewed for clear error. United States v. Turner, 718 F.3d 226, 231 (3d Cir. 2013).

Objections that are not specifically raised in the district court, including cumulative error challenges, are reviewed for plain error. Christie, 624 F.3d at 567.

III.

A.

Under Federal Rule of Evidence 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." However, a court may exclude relevant evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

At trial, defense counsel objected multiple times to the admission of Banker's and Patel's testimony, as well as documents they created and videos in which they appear, that indicate that other doctors received kickback payments.[3] Jafari argued that the

---

[3] We note that one of the videos that Jafari now objects to was initially introduced as evidence by Jafari during the cross-examination of Patel. See Gov't Br. 28. She cannot

5

evidence was not relevant and unduly prejudicial under Federal Rules of Evidence 401 and 403.

The District Court ruled that such evidence was admissible as "background on the conspiracy and then [OCM's] business model and to establish the credibility of the government's witnesses." App. 393. Further, the District Court noted that Jafari had not "sufficiently indicated any unfair prejudice resulting from the introduction of evidence that other doctors may have also taken kickbacks from [OCM]." Id. at 393-94. On appeal, Jafari argues that the District Court abused its discretion when it did not grant her motion for a mistrial based on the admission of such evidence.

For the reasons articulated by the District Court, we agree that the admission of this evidence did not violate Federal Rules of Evidence 401 or 403. Therefore, we hold that the District Court did not abuse its discretion in admitting this evidence or in denying Jafari's motion for a mistrial. Under the abuse of discretion standard, a district court's Rule 403 analysis must be "irrational" or "arbitrary" to justify a reversal. See United States v. Universal Rehab. Servs. (PA), Inc., 205 F.3d 657, 665 (3d Cir. 2000) (en banc) (quotation marks omitted). That standard is clearly not met here.

B.

In a criminal case, the Government must provide the defendant with exculpatory material, including impeachment material, that it either possesses or could obtain through due diligence. See Brady v. Maryland, 373 U.S. 83. To show a Brady violation, a

now object under Rule 403 to its use on redirect by the Government. See United States v. Console, 13 F.3d 641, 660 (3d Cir. 1993).

6

defendant must demonstrate that "(1) the government withheld evidence, either willfully or inadvertently; (2) the evidence was favorable, either because it was exculpatory or of impeachment value; and (3) the withheld evidence was material." United States v. Walker, 657 F.3d 160, 185 (3d Cir. 2011) (quotation marks omitted). As to this third prong, evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. (quotation marks omitted). Provided the evidence is disclosed at a time sufficient to allow it to be "effectively presented at trial and the defendant is not prevented by lack of time to make needed investigation, there is no reversible prosecutorial conduct in ill-timed presentation." United States v. Kaplan, 554 F.2d 577, 580 (3d Cir. 1977); see United States v. Moreno, 727 F.3d 255, 262 (3d Cir. 2013). Dismissing charges for a Brady violation, rather than granting a new trial, is a severe remedy that is generally warranted only when the defendant shows prejudice and that the violation was willful. See Gov't of V.I. v. Fahie, 419 F.3d 249, 254-55 (3d Cir. 2005).

Jafari argues that the Government failed to preserve and turn over physical evidence with both exculpatory and impeachment value. Jafari Br. 20. She points to three categories of evidence: (1) OCM lists of doctors to be paid kickbacks, which the Government allowed Banker to destroy; (2) emails on Patel's computer, which would have supported Jafari's theory of defense; (3) additional evidence of the amount of cash in the envelopes found in Banker's car.

As to this first category of evidence, Jafari argues that the Government "permitted its cooperating witness to destroy the expressly exculpatory evidence during the course of

their investigation." Jafari Br. 27. She claims that although OCM management routinely shredded lists of doctors to whom they owed kickback payments,[4] one list that was not shredded does not identify Jafari as a doctor receiving kickbacks. See Supp. App. 52. Therefore, according to Jafari, the "most reasonable inference from this evidence is that none of the prior lists named Dr. Jafari either." Jafari Br. 27. As such, she argues, the Government allowed exculpatory evidence to be destroyed when Banker, then acting as a confidential informant, shredded the lists as part of the OCM routine.

However, as the Government notes, Banker and Patel testified that although it had been regular practice at OCM to destroy the lists, that practice stopped once Banker began cooperating. See Gov't Br. 43. Banker also testified that Jafari did not appear on his September 2011 list, because at that time Banker was not responsible for paying her. Indeed, Jafari's name (as "Jaf") appeared on the October and November 2011 lists, see Supp. App. 53-54, by which time Banker had assumed responsibility for delivering her kickback payments. Thus, there is no indication that the Government withheld any such lists, or that the evidence was favorable or material.

The second category of evidence pertains to emails between Patel and Jafari, which Jafari argues could have been used to impeach Patel's testimony and are "facially exculpatory." Jafari Br. 22. Specifically, she argues that the emails show that Patel regularly paid third-parties for their effort with AIMS, which would have supported her

---

[4] At the beginning of each month, Banker created a handwritten list of doctors to pay for the prior month's referrals. The lists were reviewed with Patel and another OCM employee, and then were usually destroyed.

defense that the payments made were for her help affiliating AIMS with Clara Maas Hospital. However, the Government did produce Patel's email correspondence before Jafari's first trial, and Jafari used them extensively at her second trial. Thus, there is no "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Walker, 657 F.3d at 185 (quotation marks omitted).

Finally, Jafari argues that the Government failed to properly preserve or document the amount of cash contained within the envelopes found in Banker's car. However, Jafari did receive a photographic exhibit of the envelope marked for Jafari and found in Banker's car. See Gov't Br. 36. The photograph shows a cash payment in the amount of $415 spread out on top of the envelope. See Supp. App. 7, 17. Thus, there is no indication that the Government withheld favorable material evidence.

C.

Jafari also moved to dismiss the indictment on the grounds that the Government violated HIPAA's statutory procedure for using protected medical and health information in litigation. See Jafari Br. 39-41. Before the District Court, the Government acknowledged that some of its discovery and evidence included documents "potentially protected under a number of federal statutes, including 5 U.S.C. § 552a (The Privacy Act), 42 U.S.C. § 1306 (HIPAA), or 45 C.F.R. §§ 164.102-164.534."[5] App. 62. The

---

[5] HIPAA provides that a "covered entity . . . may not use or disclose protected health information, except as permitted or required by" the regulations. 45 C.F.R. § 164.502(a). For example, covered entities may disclose protected health information without patient consent "in response to an order of a court or administrative tribunal, provided that the

9

District Court denied Jafari's motion to dismiss the indictment, concluding that Jafari did not have standing to challenge the admission of evidence that violates the privacy rights of others, that HIPAA does not provide a private right of action, and that its enforcement is reserved exclusively to the Secretary of Health and Human Services. App. 360-61.

We agree with the District Court's conclusion that Jafari's motion to dismiss lacks merit. We need not reach each of the arguments considered by the District Court. Under HIPAA, disclosure was authorized for a law enforcement purpose. 45 C.F.R. § 164.512(f)(1)(ii)(A),(5). In addition, the Government did seek, and was granted, a protective order for the medical records used. See App. 62, 361. Therefore, disclosure was authorized in the course of the judicial proceedings. 45 C.F.R. § 164.512(e)(1)(ii), (iv), (v). See also United States v. Crippen, 627 F.3d 1056, 1063-64 (8th Cir. 2010) (holding that disclosure was authorized under HIPAA where law enforcement obtained medical records by subpoena); United States v. Wilk, 572 F.3d 1229, 1236 (11th Cir. 2009) (holding that disclosure was authorized under HIPAA exceptions for law enforcement purposes and in the course of judicial proceedings); United States v. Bek, 493 F.3d 790, 802 (7th Cir. 2007) (allowing admission of HIPAA-protected health information obtained by warrant where the court entered a protective order over that material). Accordingly, the District Court did not err by declining to dismiss the indictment.

---

covered entity discloses only the protected health information expressly authorized by such order." 45 C.F.R. § 164.512(e)(1)(i). A "covered entity" is defined as a health plan, a health care clearinghouse, or a health care provider that transmits health information electronically in certain covered transactions. 45 C.F.R. §§ 160.102, 164.104.

D.

Finally, Jafari has not demonstrated cumulative error by the District Court. On a cumulative error challenge, this Court reviews the record to determine if the alleged errors, when combined, so infected the jury's deliberations as to have had a substantial influence on the outcome of the trial. United States v. Copple, 24 F.3d 535, 547 n.17 (3d Cir. 1994). Because Jafari did not raise this challenge before the District Court, it is reviewed for plain error. As we conclude above, Jafari failed to show the District Court erred under the relevant standards of review, and now we hold that she has not demonstrated cumulative error.

IV.

For the foregoing reasons, we will affirm the judgment and conviction.