In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-3015

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EXIE TATUM, JR., also known as
ERIC TATUM,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 06 CR 231—**Rudolph T. Randa,** *Chief Judge.*

ARGUED APRIL 7, 2008—DECIDED NOVEMBER 24, 2008

Before RIPPLE, WILLIAMS, and SYKES, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Exie Tatum was convicted of various drug and weapons charges. On appeal, he claims that the district court erred by admitting three baggies of cocaine recovered during his booking because the government did not lay a proper foundation for the admission of the evidence. We find that the district did not abuse its discretion by admitting the evidence because the government laid a proper foundation and

any gaps in the chain of custody were minimal. Therefore, we affirm Tatum's convictions.

## I. BACKGROUND

Tatum was indicted for possession with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c); possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924 (c)(1)(A)(i); and being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The testimony at Tatum's two-day trial focused on drugs and paraphernalia that police officers recovered from Tatum's residence and from his person after his arrest. The items recovered from Tatum's residence included numerous controlled substances (cocaine, heroin, marijuana, as well as prescription drugs), packaging materials, a common cutting agent for cocaine, digital scales, glass beakers with white residue, cell phones, a gun, and large amounts of cash. Witnesses at the trial included Milwaukee Police Department ("MPD") Detective Mark Wagner, the officer who recovered many of the foregoing items and inventoried all of the evidence in the case; a former MPD officer named Michael Capati, who booked Tatum the night he was arrested; and Sandra Koresch, a forensic chemist from the Wisconsin state crime lab.

Capati testified that he was the booking officer at the MPD's downtown administration building on the night of Tatum's arrest. He was in charge of searching male prisoners and "bagging" property recovered from them. Capati testified that he recovered a clear plastic baggie from

Tatum's left pajama pocket. Once this evidence was recovered, he stated that he passed it off to the detective or officer responsible for the arrest. However, on cross-examination, Capati admitted that he reviewed another officer's report prior to testifying and, while he recalled that Tatum was wearing pajamas underneath his pants, he had no independent recollection of recovering the drugs from Tatum. During his testimony, Capati also was never asked to identify any drug exhibits.

Detective Wagner and another detective inventoried the narcotics recovered from Tatum's person. The evidence was put into a large brown envelope with self-sealing locks, secured in a vault, and eventually given to the crime lab for testing. At trial, Detective Wagner identified the brown envelope, but he was not asked to identify any of its contents. Furthermore, he could not independently recall inventorying the drugs, and the government refreshed his recollection with the MPD Narcotics inventory. Koresch, the crime lab technician, identified the envelope and testified about the tests that she ran on its contents. These tests revealed that the drugs in the envelope consisted of 4.024 grams of crack cocaine. After Koresch completed her testimony, the government moved to admit the narcotics recovered from Tatum during booking, which were marked for trial as exhibits 68, 69, and 70.

Tatum objected to the admission of these exhibits on the ground that the government did not lay a proper foundation. According to Tatum, Wagner did not personally recover the drugs. Moreover, Capati, who testified that he recovered the drugs, was not asked whether he could

identify the exhibits and had no independent recollection of recovering the drugs from Tatum. Tatum further argued that the state crime lab technician did not see the drugs until months after they allegedly were recovered from him during booking. Tatum maintained that these gaps in the chain of custody represented a fatal flaw that prevents the government from using exhibits 68, 69, and 70 as part of its case. The district court, after hearing arguments, overruled this objection. The court ruled that the exhibits were admissible because the defendant's chain of custody challenge went to the weight of the evidence, and not its admissibility.

Tatum was convicted on all charges. The presentence investigation report ("PSR") converted the various controlled substances into a marijuana equivalent of approximately 820 kilograms and concluded that Tatum had an offense level of 30, which yielded a sentencing range of 151 to 188 months for the drug count. The district court sentenced Tatum to 151 months on counts one (drug distribution) and three (felon in possession) to run concurrently, and 60 months on count two (firearm to further drug trafficking) to run consecutively. Tatum appeals.

## II.  ANALYSIS

### A.  The district court did not abuse its discretion by admitting the crack cocaine into evidence.

On appeal, Tatum claims the district court abused its discretion by admitting exhibits 68-70 because no witness identified and authenticated the drug exhibits.

We review the district court's evidentiary rulings for an abuse of discretion. *United States v. Luster*, 480 F.3d 551, 556 (7th Cir. 2007). "Because we give great deference to the trial judge's evidentiary rulings, we will not reverse unless the record contains no evidence on which the trial judge rationally could have based its decision." *United States v. Emerson*, 501 F.3d 804, 813 (7th Cir. 2007).

Under Rule 104(a) of the Federal Rules of Evidence, "preliminary questions concerning the admissibility of evidence shall be determined by the court," and "such matters must be established by a preponderance of proof." *United States v. Thomas*, 294 F.3d 899, 904 (7th Cir. 2002) (internal quotations omitted). Physical exhibits may be admitted so long as they are in "substantially the same condition as when the crime was committed." *United States v. Scott*, 19 F.3d 1238, 1245 (7th Cir. 1994) (internal quotations omitted). In making the admissibility determination, the district court employs a "presumption of regularity" and assumes that the government officials who had custody of the exhibits discharged their duties properly. The government does not need to prove a "perfect" chain of custody, and any gaps in the chain "go to the weight of the evidence and not its admissibility." *Id.*

Here, the government laid a proper foundation for the admission of the three exhibits of crack cocaine. Tatum maintains that Detective Wagner, who inventoried the drugs, could not independently recall that he did so; however, the government was entitled to refresh his recollection during his testimony with the inventory sheet that he prepared at the time of the incident. *See*

Fed. R. Evid. 803(5). Moreover, Capati testified that evidence recovered from a suspect is bagged and passed off to the conveying officer, and Wagner identified, at trial, the brown paper bag (also referred to as a "narcotics envelope") that contained the drugs recovered from Tatum. Under the presumption of regularity, the district court was entitled to presume that the bag contained the drugs that had been removed from Tatum during booking. That Wagner was not asked to identify the drugs contained within the bag does not persuade us that these were not the drugs recovered from Tatum. The crime technician identified the contents of the brown paper bag as containing crack cocaine, and there is no evidence that its contents had been altered, especially since the bag had self-sealing locks to prevent tampering prior to transport to the crime lab. *See Thomas*, 294 F.3d at 905 ("merely raising the possibility (however hypothetical) of tampering is not sufficient to render evidence inadmissible") (internal quotations omitted).

Even if there is a gap in the chain of custody because the booking officer could not remember recovering the drugs from Tatum, the booking officer did testify that it was his routine to give any drugs found on a suspect's person to the arresting officer—in this case, Wagner, who testified that he inventoried the drugs. *See Scott*, 19 F.3d at 1244-45 (applying the presumption of regularity where there was a minor gap in the chain of custody). Therefore, the failure of the booking officer to recall specifically recovering evidence from Tatum does not render the drugs inadmissible. *Cf. Thomas*, 294 F.3d at 905 ("When chain of custody is called into question without any

evidence of tampering, and if the tapes were in official custody at all times, a presumption arises that the tapes were handled properly.").

In any event, if there was an error admitting the drugs, it was harmless. Even if the 4.024 grams of crack cocaine that were taken from Tatum following his arrest are inadmissible, the overall drug quantity amount drops down to a marijuana equivalent of approximately 740 kilograms. That reduction is not enough to alter Tatum's current guidelines range of 151 to 188 months. *See United States v. Frith*, 461 F.3d 914, 918 (7th Cir. 2006) (district court's error in determining the amount of the loss for defendant's securities law violations was harmless because even if that erroneous amount was excluded from the loss calculation, defendant's offense level remained the same). We find that the government laid a proper foundation for the drugs through the testimony of Wagner and the crime lab technician; that any gaps in the chain of custody were likely minimal; and the district court did not abuse its discretion by admitting the drugs.

### B. Tatum is free to file a § 3582(c)(2) motion in the district court.

Tatum seeks a remand to pursue retroactive application of the revised crack guideline to his sentence. Effective November 1, 2007, the United States Sentencing Commission reduced offense levels in most crack cocaine cases by two levels. *See* United States Sentencing Commission Guidelines Manual, Supplement to Appendix C, 226-31

(2007) (Amendment 706). The Commission then made the changes retroactive, effective March 3, 2008, which permitted defendants to rely on the amended crack guidelines to seek sentence reductions under 18 U.S.C. § 3582(c)(2). *See* Supplement to the 2007 United States Sentencing Guidelines Manual at 1-4 (Mar. 3, 2008) (U.S.S.G. § 1B1.10(c)). The government contends that we need not vacate and remand Tatum's sentence because the recent guideline amendments do not render Tatum's sentence erroneous, and it would be more appropriate for Tatum to file a motion in the district court rather than challenge his sentence on appeal.

We agree with the government that the proper vehicle for Tatum to seek retroactive relief under the revised guideline is a motion to the district court pursuant to § 3582(c)(2). We need not consider whether Tatum can receive any relief under *Kimbrough v. United States,* 128 S. Ct. 558, 169 L.E.2d. 481 (2007), because during oral argument defense counsel stated he was not seeking relief under *Kimbrough* in this appeal. We did not decide in *United States v. Taylor*, 520 F.3d 746 (7th Cir. 2008), nor do we today, whether a defendant may receive the benefit of *Kimbrough* in a § 3582(c)(2) motion to the district court.

## III. CONCLUSION

For the reasons set forth above, we AFFIRM the judgment of the district court.