In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-3602

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSHUA R. MACKIN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:13-cr-00062 — **Theresa L. Springmann**, *Judge.*

ARGUED MAY 28, 2015 — DECIDED JULY 13, 2015

Before FLAUM, KANNE, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* Appellant Joshua Mackin was
charged with one count of being a felon in possession of a
firearm. During discovery, the government disclosed an in-
complete copy of the continuity slip used to track the fire-
arm's chain of custody. Later, at trial, the government pro-
duced the correct and complete copy. Mackin moved for a
mistrial, arguing that the government violated its Rule 16
obligation to turn over the correct and complete document,

as the document was material to preparing his defense. The trial court denied his motion, and he now appeals that denial. For the reasons discussed below, we vacate Mackin's conviction and remand the case for further proceedings.

## I. BACKGROUND

On August 2, 2013, Fort Wayne police officers Treven Brown and Alexander Ramon went to the home of Appellant Joshua Mackin, seeking to serve him with a valid arrest warrant. The officers apprehended Mackin in the alley outside his home. After placing Mackin in handcuffs, Officer Ramon searched Mackin's person. From Mackin's pants pocket, Officer Ramon recovered a silver handgun that was loaded with five rounds. Officer Brown confiscated the firearm, and he recorded its serial number on an incident report. Officer Brown testified that the weapon was within his view or possession from the time Officer Ramon recovered it until Officer Brown secured it in an evidence locker.

At the time he secured it in the evidence locker, Officer Brown completed a "continuity slip" for the firearm. A continuity slip is a document designed to track the movements of a piece of evidence while it remains in law enforcement's custody. Officer Brown testified that, adhering to protocol, he filled out and signed the continuity slip at the time he placed the firearm in the evidence locker. He then placed the continuity slip in the locker with the firearm.

One month after Mackin's arrest, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent Craig Edwards examined a firearm bearing the same serial number as the number listed on the incident report prepared by Of-

ficer Brown. Agent Edwards determined that the weapon was functional and was manufactured in California.

On August 28, 2013, a grand jury returned a one-count indictment against Mackin, charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). In an accompanying allegation, the government sought the forfeiture of the firearm, identifying it by the serial number "3224934." The district court set Mackin's trial for August 19, 2014.

At some point prior to trial, the government turned over discovery materials requested by Mackin. Included in those materials was a document entitled "F.W.P.D. Continuity Record," or the continuity slip discussed above. The slip is a standard form that includes a variety of labeled boxes, or fields, into which one enters information about items of evidence. Several fields are designed to track the movement of a piece of evidence, including a series of signature boxes marked as "From: Signature, PE" and "To: Signature, PE."

The continuity slip produced to Mackin before trial contained a number of empty fields. To be sure, it included in typewritten form Mackin's name, the date, time, and address of the "original investigation," and a description of the firearm allegedly obtained from Mackin. In the first "From" signature box, the word "copy" is handwritten, and in the first "To" signature box, "Locker #26" is handwritten. But the remaining "From" and "To" boxes are blank, and no signatures appear anywhere on the continuity slip. It was incomplete.

On August 5, 2014, the government filed a motion to correct what it called a "scrivener's error" in the forfeiture alle-

gation that had accompanied Mackin's indictment. The motion to correct indicated that in the forfeiture document, the firearm's serial number did not match the serial numbers listed in Officer Brown's report, the ATF's search record, or the serial number inscribed on the firearm itself.[1] The district court granted the motion, and the government corrected the serial number as listed in the forfeiture allegation. The government did not correct or supplement the incomplete continuity slip.

On August 12, 2014, one week before trial, Mackin filed a proposed jury instruction involving a duress defense. The government responded with a motion *in limine*, requesting that Mackin be required to establish a *prima facie* case of duress in order to present that affirmative defense instruction to the jury. The district court denied Mackin's proposed jury instruction and granted the government's motion. That decision left Mackin with only one line of defense: the largely incomplete continuity slip.

At trial, the government called Officer Brown as its first witness. Officer Brown testified to the circumstances of Mackin's arrest, including the recovery of the firearm. During that testimony, the government provided Officer Brown with his incident report and a copy of the continuity slip that had been disclosed to the defense. After refreshing his recollection with those documents, Officer Brown testified that the serial number of the weapon he recovered from Mackin was 3224394. The government then showed Officer Brown a

---

[1] The forfeiture document listed the serial number as 3224934. The firearm's actual serial number, and the number recorded on all other documents, was 3224394.

firearm marked as "Government Exhibit 1." Officer Brown testified that the gun appeared to be the same one that he recovered from Mackin. After comparing the serial numbers, he testified that it was indeed the same firearm. The government then moved to admit the firearm into evidence.

Mackin objected to the firearm's admission and was granted leave to *voir dire* Officer Brown regarding the exhibit. Officer Brown described the normal protocol for securing a weapon, storing the evidence, and completing a continuity slip. He stated that, as the officer placing the weapon into storage, he completed and signed the continuity slip that accompanied the weapon. The slip was then placed in the evidence locker with the firearm. Any person who later accessed the weapon was then required to sign the form, so that, as Officer Brown explained, "we know who has that weapon and where it's at at all times."

Mackin asked Officer Brown to point out where his signature appeared on the continuity form that had been produced to Mackin in discovery. Officer Brown acknowledged that his signature did not appear anywhere on the document, but stated that "if [defense counsel had] the original, [Officer Brown] would be more than happy to show [counsel] on that." Defense counsel, however, had only the incomplete copy provided during discovery. The court then asked the government if the original form was available, to which the government responded that it would check its files.

Following that *voir dire*, Mackin again objected to the admission of the firearm. He argued that the government could not lay the proper foundation for its admission into evidence because there were no signatures or other notations

on the form to document the weapon's handling while in law enforcement's possession. Without that, he argued, the government could not establish the gun's chain of custody. He stated that "apparently there is an entirely separate document that's been prepared by Officer Brown that Mr. Mackin has not been provided as part of his defense."

The court then held a bench conference with counsel outside the hearing of the jury. During the conference, the case agent seated with the government produced a continuity slip that differed from the one Mackin had. This new form contained a number of signatures in the "To" and "From" fields, continuing onto a second page, as well as an indication that the firearm was at one point located in the "ATF vault." The government conceded that this new form had additional information that was not present on the previously disclosed form. The government also conceded that it had not previously disclosed this completed form to Mackin.

Mackin objected to the introduction of the new continuity form and then moved for a mistrial. He stated that the issue of continuity—and the related chain of custody—was "in large part" his defense. Mackin argued that he was prejudiced by the government's nondisclosure in a manner from which he could not recover. According to Mackin's counsel, had the defense been given the correct continuity slip, "we may not even be here today, because Mr. Mackin may have very well pled."

The court denied Mackin's mistrial motion and allowed both continuity slips to be presented to the jury. It also allowed Mackin to cross-examine the relevant witnesses regarding the two different continuity slips. The firearm was ultimately admitted into evidence, and the jury found

Mackin guilty of one count of being a felon in possession of a firearm.

## II. ANALYSIS

On appeal, Mackin argues that the government violated Federal Rule of Criminal Procedure 16 by failing to disclose the correct continuity slip. Mackin argues that he was prejudiced by that violation, and that the district court abused its discretion in denying his motion for a mistrial. For the reasons discussed below, we conclude that the government did violate Rule 16 and that mistrial was the appropriate remedy to cure that violation.

*A. Rule 16 Violation*

Rule 16 governs the discovery and inspection of evidence in criminal matters. It provides in relevant part that:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i) the item is material to preparing the defense;
>
> (ii) the government intends to use the item in its case-in-chief at trial; or
>
> (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E). The rule also imposes a continuing duty of disclosure, should a party uncover additional discoverable material prior to or during trial. Fed. R. Crim. P. 16(c).

Mackin argues that an accurate copy of the continuity slip was material to preparing his defense, and therefore the government violated Rule 16(a)(1)(E)(i) by failing to disclose it before trial. The government responds that it did not commit a violation of Rule 16, because it "had no reason to suspect that Mackin would contest chain of custody or that continuity slips would be material to Mackin's defense." We agree with Mackin that a Rule 16 violation occurred in this case.

It is unclear whether the government concedes that it erred in disclosing the unsigned, nearly blank continuity slip. Its comments to the district court seem to suggest that it did err either in disclosing the wrong version of the form, or in failing to supplement its discovery.  See, for example, the following exchange between defense counsel and the government during the court's sidebar discussion:

> **[Defense counsel]:** So we get this document … now in the middle of trial, they're saying "oh, no, no, no, there's a continuity report, don't worry about it. This is the same gun." We didn't know that until about 2 minutes ago.

> **[Prosecutor]:** Well, Your Honor, the Government provided…

> **[Defense counsel]:** That's a totally different document.

> **[Prosecutor]:** The government provided the continuity form we had.

> **The Court:** But never updated or supplemented with the one you have in hand.

**[Prosecutor]:** I'm sorry, I do have that now.

The government has not explained why it did not produce the complete continuity slip before trial, but it argues on appeal that it had no obligation to do so in any event. The government contends that Rule 16 did not require it to produce any continuity slip—complete or incomplete—in the first place because there was no reason to suspect that the slip would be material to Mackin's defense.

First, we note that the government never argued at trial that the continuity slip was beyond the reach of discovery under Rule 16; on the contrary, it produced the incomplete slip during discovery and then affirmatively sought to introduce the correct form at trial—either as helpful for its case-in-chief or to rebut Mackin's defense. In addition, we question the government's conclusory statement that it had no reason to believe the gun's chain of custody would be material to the defense.

But, putting those issues to the side, the government misses the critical issue. Mackin does not argue that he had an absolute right to disclosure of the continuity slip, or that continuity slips are mandatory discovery material in the mine-run of cases. Instead, he argues that in this particular case, once the government chose to disclose the *incomplete* continuity slip, he was entitled to the *complete and correct* one. We agree, and we hold as much today.

Mackin received a continuity slip that was devoid of the signatures that he knew were required. The government's own witness testified to the importance of the continuity slip in safeguarding the firearm as it remained in law enforcement custody. Indeed, as far as we can tell, that is the entire

purpose of a continuity slip. The signatures, as well as the descriptions of the firearm's locations, were the only way to track the firearm's movements. Mackin was justified in believing that the continuity slip would be used for its obvious purpose—the purpose verified by law enforcement officials at trial. The slip he was given was clearly deficient, and it reasonably led him to suspect that the government had not followed the proper chain-of-custody procedures in his case.

This, in turn, led him to think he had a plausible defense based on the incomplete continuity slip. Indeed, after the district court denied his motion to introduce the duress defense, the continuity slip was Mackin's only line of defense against nearly certain conviction. As it turned out, however, this defense was not plausible: there was another, complete form that fully tracked the firearm's chain of custody. The problem is, he did not know that until the government produced the new form at trial.

We acknowledge the possibility that continuity slips may not always be discoverable. But once the government chose to disclose the incomplete slip, the defense was entitled to rely on that disclosure as being an accurate representation of the evidence the government had in its possession. *See United States v. Lee*, 573 F.3d 155, 161 (3d Cir. 2009) (stating that "Rule 16's discovery requirements made it reasonable for defense counsel to rely on the Government to provide, in the first instance, an accurate copy of the evidence offered at trial."). The defense was also entitled to assume that the government would supplement its discovery if necessary, as required by Rule 16(c).

As Mackin's counsel expressed at oral argument, Mackin would have been better off in this case had the government

not disclosed a continuity slip *at all.* The government's *own error* led Mackin to believe he had a viable defense. In the circumstances of this case, the burden of that error should fall on the government.

Further, even assuming the government initially had no reason to predict a chain-of-custody defense, it certainly had a reason to predict it after disclosing the incomplete continuity slip. 18 U.S.C. § 922(g)(1) makes it unlawful for any person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year … to possess *in or affecting commerce,* any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported *in interstate or foreign commerce.*" 18 U.S.C. § 922(g)(1) (emphasis added).

Because Mackin had stipulated to the prior felony conviction, only his possession of the firearm and its nexus to interstate commerce remained as triable issues. Proof of the firearm's chain of custody went directly to the weight the jury could assign the firearm evidence—including the ATF's assessment of its link to interstate commerce. This is in addition to the fact that the government had already discovered a "scrivener's error" involving the serial number of the firearm—another mistake that tends to cast doubt on the government's handling of the evidence. The government was sufficiently on notice after its incomplete disclosure to have anticipated the chain-of-custody defense, and at that point, it should have supplemented its disclosure under Rule 16(c) by producing the complete continuity slip.

*B. Mistrial Motion and Prejudice*

We review the denial of a Rule 16(d)(2) motion for an abuse of discretion. *United States v. De La Rosa*, 196 F.3d 712, 715 (7th Cir. 1999). In addition, we will not disturb a ruling on a Rule 16 sanctions motion absent a showing of prejudice. *Id.* at 715-16.

It is firmly established that a defendant is prejudiced under Rule 16 when he is "unduly surprised and lacks an adequate opportunity to prepare a defense." *Id.* at 716. Mackin argues that he was denied an adequate opportunity to prepare a defense because he formed his trial strategy relying on the incomplete evidence that had been provided by the government. The government argues that Mackin did not suffer any prejudice. We agree with Mackin that he suffered prejudice under the particular facts of this case—specifically relating to the interstate movement of the firearm.

As previously described, Mackin stipulated to the fact that he had been convicted of a qualifying felony. So the government, in order to secure a conviction, had to prove two elements: (1) that Mackin possessed a firearm; and (2) that the firearm had been possessed in or affecting commerce, or that the firearm had been shipped or transported in interstate or foreign commerce.

The government's evidence regarding his possession of a firearm was strong. So it appears to us that the government's primary burden at trial was to prove the firearm's link to interstate commerce. (That nexus is, after all, what makes this a federal offense.) The government would seek to prove that element, as is the case in most felon-in-possession cases, through the ATF's analysis of the weapon's manufacture and

sale. Mackin, for his part, then had to undermine the gun's link to interstate commerce. He sought to do so by casting doubt on law enforcement's handling of the evidence, and in particular, its storage and handling by the Fort Wayne Police Department and the ATF. By pointing out gaps in the weapon's chain of custody, Mackin could alter the weight assigned to the firearm evidence. *See United States v. Tatum*, 548 F.3d 584, 587 (7th Cir. 2008). That includes the weight assigned to the firearm exhibit itself, if admitted into evidence, as well as potential challenges to the ATF's analysis of the firearm.

Mackin argues that had the government disclosed the correct continuity form, he would have known that his defense strategy was implausible. Had the government disclosed the completed form, he contends, he would have known that the weapon's chain of custody had been correctly documented, and he would have had no basis upon which to raise a chain-of-custody defense. Because the government's own error raised the very possibility of the defense he attempted to assert at trial, Mackin argues, the Rule 16 violation "unduly surprised" him and deprived him of the "opportunity to prepare a defense." *Id.*

We find instructive the case of *United States v. Lee.* 573 F.3d 155. The appellant there was charged with possessing a quantity of crack cocaine that had been found in a hotel room on January 7, 2005. *Id.* at 158-59. During discovery, the government disclosed to Lee a photocopy of the front side of the hotel room's registration card. *Id.* at 159. The photocopied portion indicated that an individual named "Omar Martin," who shared Lee's home address, checked in on January 3 for a one-night stay. *Id.* at 158.

Lee argued at trial, based on the registration card, that "Martin" (presumably Lee) had checked out of the hotel room days before the drugs were found. *Id.* at 159. Therefore, Martin/Lee could not be proven to have possessed the drugs. When the case went to the jury, the jurors were provided with the trial exhibits for their deliberations. *Id.* at 160. These exhibits included the original registration card. *Id.*

Several hours after beginning to deliberate, the jury asked the court, "What is the information on the back of the registration card in pencil?" *Id.* Until that time, neither the prosecution nor the defense was aware that the back of the registration card contained additional notations. *Id.* The back of the card contained dates (written by an unidentified person) indicating that "Martin" had extended his stay at the hotel through January 7—the day that the drugs were found. *Id.* at 158.

Lee moved for a mistrial, since the prosecution had failed to disclose the information on the back of the card prior to trial. *Id.* at 160. The judge denied the motion, instead instructing the jury to ignore the notations on the back of the card. *Id.* Lee was ultimately convicted.

On appeal, the Third Circuit held that Lee had been prejudiced by the government's nondisclosure and that mistrial was the appropriate remedy. *Id.* at 164-65. To begin, the court noted that the information contained on the back of the card would "entirely defeat Lee's defense argument." *Id.* at 161. The court concluded that Lee "was deprived of any opportunity to prepare meaningfully for trial [or] to design an intelligent trial strategy." *Id.* at 165. The court held that:

> [a]bsent the discovery violation, Lee would have like-
> ly crafted a different trial strategy that might have
> proven more effective in light of the information on
> the back of the registration card. Finally, Lee might
> have chosen to enter into plea negotiations with the
> Government if he had accurate information about the
> strength of its case.

*Id.*

So it is with Mackin's case. The incomplete continuity form led Mackin to believe that he had a viable chain-of-custody defense. Had the government disclosed the correct form, Mackin would have known that he was wrong. Instead, he proceeded to trial believing that he could show that the proper evidence-handling procedures had not been followed, because that is what the evidence disclosed by the government itself suggested. He developed his trial strategy based on the information provided by the government—information that proved, mid-trial, to be at best incomplete.

The government argues that Mackin was not prejudiced by this belated disclosure because he could have changed his strategy mid-trial. According to the government, Mackin's opening statements "did not reference continuity or chain of custody and did not commit him to any particular line of defense." But, as Mackin argues (without any rebuttal from the government), this was his only possible line of defense—however weak it may have been. This is especially true because the court had already denied his only other defense strategy: his proposed jury instruction regarding duress.

Mackin did his best to "plow through," as the trial court told him to do, after the disclosure. He cross-examined the

witnesses concerning the two versions of the continuity slip. But "plowing through" was not enough to cure the damage caused by the government's nondisclosure. Mackin's whole strategy going into trial was based on the absence of a complete and correct continuity form. Once the government belatedly produced a complete form, no amount of cross-examination could have helped Mackin. *See United States v. Noe*, 821 F.2d 604, 607 (11th Cir. 1987) (holding that the government's failure to turn over discoverable evidence "is so serious a detriment to the preparation for trial and the defense of serious criminal charges that where it is apparent, as here, that the defense strategy may have been determined by the failure to disclose, there should be a new trial." (quoting *United States v. Rodriguez,* 799 F.2d 649, 651 (11th Cir. 1986) (per curiam))).

Finally, Mackin's counsel made clear on the record at trial that the Rule 16 violation also impacted his ability to intelligently consider his plea options. His counsel immediately stated, upon the government's introduction of the correct form:

> The problem with them giving this to us now is our defense in large part is based upon the fact that there are problems with the continuity of this weapon. Now, if we had that report, with signatures on it, we certainly would have changed our approach to this. In fact, we may not even be here today, because Mr. Mackin may very well have pled.

Adequate preparation of a defense includes the ability to intelligently weigh one's plea options. The denial of that opportunity here constituted prejudice. *See United States v. Muniz-Jaquez*, 718 F.3d 1180 (9th Cir. 2013) ("A defendant who

knows that the government has evidence that renders his planned defense useless can alter his trial strategy. Or he can seek a plea agreement instead of going to trial."); *Lee*, 573 F.3d at 165 ("Lee might have chosen to enter into plea negotiations with the Government if he had accurate information about the strength of its case."); *United States v. Alvarez*, 987 F.2d 77, 85 (1st Cir. 1993) (finding prejudice where defendant was "deprived of opportunity to design an intelligent … plea strategy"); *United States v. Pascual*, 606 F.2d 561, 565 (5th Cir. 1979) ("It would be hard to make an argument with any degree of plausibility that the use of this [evidence] without prior production did not seriously prejudice the defendants in exercising their option to plead not guilty."); *see also Lafler v. Cooper*, 132 S.Ct. 1376, 1381 (2012) (stating that "criminal justice today is for the most part a system of pleas, not a system of trials").

The government counters by arguing that if the belatedly disclosed continuity form "had dramatically shifted the evidence, Mackin was perfectly free to change his plea to guilty in the middle of trial." This argument ignores, of course, that Mackin had by then almost certainly lost any benefit of a guilty plea. Prior to trial, even if the government had chosen not to offer Mackin a favorable plea agreement, he still could have received the benefit of a two-point offense-level reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. That likely would have resulted in at least a fifteen-month reduction in his sentence. After trial began, however, the benefit of that guidelines section was likely lost to Mackin: the reduction typically does not apply to someone who "puts the government to its burden of proof at trial." U.S.S.G. § 3E1.1, cmt. 2.

### III. CONCLUSION

For the reasons discussed above, we find that the district court abused its discretion in denying Mackin's motion for a mistrial, and that Mackin was prejudiced by that denial. Accordingly, Mackin's conviction is VACATED and we REMAND this case for further proceedings consistent with this opinion.