**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 18-1579 and 18-1580
_____

UNITED STATES OF AMERICA

v.

MARIBEL NUNEZ,

Appellant in No. 18-1579

_____

UNITED STATES OF AMERICA

v.

MADELINE ROSARIO,

Appellant in No. 18-1580

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Nos. 2-16-cr-00148-002 & 001)
District Judge: Hon. Harvey Bartle III
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 13, 2019
_____

Before: HARDIMAN, GREENAWAY, JR. and BIBAS, *Circuit Judges*.

(Opinion Filed: December 4, 2019)
_____

OPINION[*]
_____

GREENAWAY, JR., *Circuit Judge*.

This is a direct criminal appeal.  Defendants-Appellants Maribel Nunez and

Madeline Rosario ("Defendants") were charged with conspiracy to commit theft of

government property, theft of government property, and aggravated identity theft.  Their

first trial ended in a mistrial because the Government failed to disclose exculpatory

evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  In their second trial,

Defendants were convicted of one count of criminal conspiracy to commit theft of

government property and one count of theft of government property.

Defendants argue that the District Court erred in denying their two motions to

dismiss the indictment with prejudice based on the Government's alleged *Brady*

violations.  Rosario also argues that the District Court erred in her sentencing by applying

U.S.S.G. § 2T1.4 and its enhancements, as well as the aggravating role enhancement

under U.S.S.G. § 3B1.1.  For the following reasons, we will affirm.

## I.    BACKGROUND

Defendants were charged in connection with their involvement in a scheme to

obtain United States Treasury tax refund checks and third-party refund checks using

stolen Social Security numbers.  They operated the scheme through Rosario's tax

preparation business.  Defendants used several individuals to receive and cash the refund

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not
constitute binding precedent.

checks, some of whom testified against Defendants at trial.

Seven days into the first trial, the District Court and Defendants discovered that the Government had failed to disclose that one of the cooperating witnesses, Jerry Villahermosa, believed that portions of his grand jury testimony identifying the actions of one of the Defendants had been transcribed incorrectly. Specifically, before the grand jury Villahermosa had testified about two episodes in which he picked up and deposited tax refund checks at the direction of Rosario, but he later claimed that he had actually testified that it was Nunez who had directed him, and that the transcript was incorrect. At trial, Villahermosa testified that Nunez, not Rosario, had been involved in these episodes. Villahermosa had informed the Government about the error in the grand jury transcript well before trial. The Government had asked for a correction to the transcript, but the court reporter refused to make any changes after listening to the audio recording of the grand jury testimony and concluding that the transcript was already correct. The Government never informed Defendants about any of this.

In response to this disclosure, Defendants moved to dismiss the indictment with prejudice. The District Court granted a mistrial on the ground that the Government had violated its obligations under *Brady* and *Giglio v. United States*, 405 U.S. 150 (1972), but after further briefing, denied Defendants' motion to dismiss. The District Court found that, although the Government's conduct constituted at least "reckless disregard or deliberate indifference concerning its constitutional obligations," Defendants did not show that they had suffered prejudice. *United States v. Rosario*, No. 2-16-cr-00148, 2017 U.S. Dist. LEXIS 86987, at *20 (E.D. Pa. June 6, 2017). However, the District Court did

3

grant a new trial.

Defendants were convicted in the second trial of one count of conspiracy to commit theft of government property and one count of theft of government property. After the second trial, the Government learned that one of its cooperating witnesses, Sandra Javier, had been hospitalized after she attempted to commit suicide before trial. The Government acknowledged that it was aware before trial that Javier had been hospitalized for anxiety, but said that the prosecutors did not know that she had attempted suicide or that her anxiety was connected to her cooperation with the Government.

In response to this disclosure, the District Court made the transcript of Javier's sentencing hearing and her sentencing memorandum, including the record of her hospitalization, available to Defendants. Defendants then again moved to dismiss the indictment with prejudice and vacate the guilty verdicts. They also served a subpoena for all of Javier's mental health records. After reviewing Javier's medical records in camera, the District Court denied the motion to dismiss. It found that the "bulk of the information that is the subject of defendants' motion was not known to the Government until after the second trial concluded" and that Javier's medical records were not material because "there is no reasonable probability that the disclosure of the records would have resulted in a different outcome." App. 6–7.

Nunez was sentenced to 41 months' imprisonment and three years of supervised release. Rosario was sentenced to 72 months' imprisonment and three years of supervised release. Both filed timely appeals.

## II.    JURISDICTION

The District Court had subject matter jurisdiction under 18 U.S.C. § 3231.  We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## III.    DISCUSSION

Defendants raise four issues on appeal.  We address each in turn.

### A.    The *Brady* Claims

Defendants argue that the District Court erred in denying their two motions to dismiss the indictment with prejudice.  "In reviewing a trial court's remedy for an alleged *Brady* violation, we review conclusions of law *de novo* and review any findings of fact, where appropriate, for clear error."  *Gov't of the V.I. v. Fahie*, 419 F.3d 249, 252 (3d Cir. 2005).

To establish a *Brady* violation, the defendant must show that: "(1) the government withheld evidence, either willfully or inadvertently; (2) the evidence was favorable, either because it was exculpatory or of impeachment value; and (3) the withheld evidence was material."  *United States v. Walker*, 657 F.3d 160, 185 (3d Cir. 2011) (quoting *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004)).  Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Id*. (quoting *Lambert v. Beard*, 633 F.3d 126, 133 (3d Cir. 2011)).

If a defendant meets this standard, the trial court may grant a retrial or, in limited circumstances, dismiss the indictment.  "While retrial is normally the most severe sanction available for a *Brady* violation, where a defendant can show both willful

5

misconduct by the government, and prejudice, dismissal may be proper." *Fahie*, 419 F.3d at 255. Dismissal with prejudice is "the harshest available sanction for a *Brady* violation." *Id.* at 253.

### 1. The Denial of Defendants' Motion to Dismiss with Prejudice

Defendants argue that the District Court erred in denying their first motion to dismiss the indictment with prejudice after the mistrial. The District Court concluded that the Government committed willful misconduct when it repeatedly failed to disclose Villahermosa's belief that the transcript of his grand jury testimony was incorrect, but decided that Defendants had not shown prejudice. We agree.

Although the Government agrees with the District Court's decision not to dismiss the indictment, it also submits that the District Court erred in concluding that the *Brady* violation was willful. We disagree. As the District Court described in detail, the Government had multiple opportunities to disclose the information about Villahermosa's grand jury testimony, before and during trial, but consistently failed to do so. That this was *Brady* material is beyond dispute. Inconsistent testimony under oath plainly has substantial impeachment value, and the failure to disclose it "undermines confidence in the outcome of the trial." *Walker*, 657 F.3d at 185 (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)). The Government's contention that it merely misjudged the significance of the evidence is unconvincing; had the Government believed the information was insignificant, it would not have attempted to correct the grand jury transcript. We therefore find no error in the District Court's determination that the Government's violation was willful.

6

But willful or reckless misconduct is not enough to dismiss an indictment with prejudice. The trial court may not dismiss the indictment "absent a showing of prejudice to the defendant." *Fahie*, 419 F.3d at 253. Defendants have not shown prejudice; their argument rests almost entirely on the Government's misconduct. Before the retrial, Defendants had full access to the information about Villahermosa's inconsistent statements. They have not argued that their defense was compromised in any way by retrial. For example, they have not argued that any witnesses or other critical evidence became unavailable or that retrial "would advantage the government, probably allowing it to salvage what the district court viewed as a poorly conducted prosecution," *United States v. Chapman*, 524 F.3d 1073, 1086–87 (9th Cir. 2008). Since Defendants have not shown any prejudice, "dismissal of the indictment [was] plainly inappropriate, even though the violation may have been deliberate." *Fahie*, 419 F.3d at 253 (quoting *United States v. Morrison*, 449 U.S. 361, 365 (1981)); *cf. Chapman*, 524 F.3d at 1086 (dismissing the indictment in a case of "flagrant prosecutorial misconduct" because no lesser sanction could adequately remedy the harm done and the defendants would have been prejudiced by a new trial since that would have allowed the government "to salvage" a poor case with "myriad weaknesses").

### 2. The Denial of Defendants' Motion to Dismiss and Vacate Guilty Verdicts

Defendants next argue that the District Court erred in denying their second motion to dismiss the indictment with prejudice and vacate the guilty verdicts. At issue here is the Government's failure to disclose that its cooperating witness Sandra Javier was hospitalized for anxiety before her testimony in the retrial. The District Court concluded

7

that the evidence about Javier's medical history that was known to the Government during trial was not material. Therefore, the Government's failure to disclose was not a *Brady* violation. We agree.

After an in camera review of her medical records, the District Court determined that Javier's medical history did not cast doubt on her perception, competence, memory, or veracity. We see no error in this finding; without more, the fact that a cooperating coconspirator is anxious before testifying is unsurprising and does not inherently cast doubt on the coconspirator's veracity, nor is such information necessarily fodder to undermine credibility.

Moreover, even if the information about Javier had some minimal impeachment value, the undisclosed information was not material. The evidence against Defendants was overwhelming. The Government introduced testimony from multiple participants in the scheme, as well as bank statements, records containing names and Social Security numbers, tax refund checks and IRS paperwork in other peoples' names, account numbers for wire-remitting companies, and addresses that corresponded to the tax refund checks, all of which implicated Defendants as participants in the criminal conduct. Accordingly, there is no reasonable probability that information about Javier's hospitalization would have affected the outcome of the trial. *See, e.g.*, *Johnson v. Folino*, 705 F.3d 117, 129 (3d Cir. 2013) ("Suppressed evidence that would . . . be used to impeach testimony of a witness whose account is strongly corroborated is generally not considered material for *Brady* purposes.").

## B.    Rosario's Sentencing Claims

Rosario argues that the District Court made several errors in calculating her sentence.  A district court should make factual findings that bear on application of the Sentencing Guidelines by a preponderance of the evidence.  *United States v. Grier*, 475 F.3d 556, 561 (3d Cir. 2007) (en banc).  We review a district court's interpretation of the Sentencing Guidelines de novo.  *United States v. Batista De La Cruz*, 460 F.3d 466, 468 (3d Cir. 2006).  We generally review a district court's application of the Sentencing Guidelines to the facts for abuse of discretion, but for clear error where the Guidelines "set forth a predominantly fact-driven test."  *United States v. Thung Van Huynh*, 884 F.3d 160, 165 (3d Cir. 2018) (internal alteration omitted) (quoting *United States v. Richards*, 674 F.3d 215, 223 (3d Cir. 2012).  "Factual findings will be reversed only if clearly erroneous."  *United States v. Tupone*, 442 F.3d 145, 149 (3d Cir. 2006).

### 1.    The Use of U.S.S.G. § 2T1.4 and Its Enhancements

Rosario first argues that the District Court erred in using § 2T1.4 to calculate her Guideline range and by applying the enhancements under § 2T1.4(b)(1) and (2).  We disagree.

The Guideline that applies to Rosario's crime of conviction, 18 U.S.C. § 641, is § 2B1.1.  Subsection (c)(3) of this Guideline, however, provides:

> If (A) neither subdivision (1) nor (2) of this subsection applies; (B) the defendant was convicted under a statute proscribing false, fictitious, or fraudulent statements or representations generally . . . ; and (C) the conduct set forth in the count of conviction establishes an offense specifically covered by another guideline in Chapter Two (Offense Conduct), apply that other guideline.

9

U.S.S.G. § 2B1.1(c)(3).

Pursuant to this subsection, the District Court applied § 2T1.4, which applies to "Aiding, Assisting, Procuring, Counseling, or Advising Tax Fraud," to calculate Rosario's Guideline range. Although Rosario initially objected to the use of § 2T1.4, her counsel withdrew that objection at the sentencing hearing: "[W]e stated in our objections within our sentencing memorandum that we objected to the use of [2T1.4] . . . . We'll withdraw that objection and our argument was that the 2B1.1 should apply but we withdraw that objection." Supp. App. 428. The Government argues that Rosario has waived this objection on appeal. We agree.

Waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Porter*, 933 F.3d 226, 229–30 (3d Cir. 2019) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). "[A]n explicit agreement or stipulation constitutes a waiver of rights if the defendant was aware of the right," and when a defendant waives the right, she may not seek relief on appeal. *Gov't of the V.I. v. Rosa*, 399 F.3d 283, 291 (3d Cir. 2005). The colloquy between the District Court and defense counsel makes plain that Rosario was aware of the objection but affirmatively chose to withdraw it. Therefore, Rosario may not seek relief on this claim on appeal.[1]

---

[1] Even if Rosario had not waived this objection, the District Court correctly applied § 2T1.4. *See United States v. Barnes*, 324 F.3d 135, 139–40, 140 n.1 (3d Cir. 2003) (holding that, in sentencing a defendant for filing fake claims for tax refunds, § 2T1.4 should be used because the tax fraud guideline was more apt than the predecessor guideline to § 2B1.1 for fraud and deceit).

Similarly, Rosario waived her objection to the § 2T1.4(b)(2) sentencing enhancement. Section 2T1.4(b)(2) provides for a two-point increase if the offense "involved sophisticated means." The Government argues that Rosario waived her objection because defense counsel conceded his argument that the enhancement did not apply: "Your Honor, as I said, it sounds like I'm not winning on this sophisticated argument and I understand that. So, I'd like to just move on . . . . I'm conceding that argument." Supp. App. 432–33. It is plain from counsel's statement that he conceded his objection that Rosario knowingly withdrew this argument as well.[2]

Further, the District Court did not err in applying the sentencing enhancement under § 2T1.4(b)(1). Section 2T1.4(b)(1) provides for a two-level increase if the defendant "committed the offense as part of a pattern or scheme from which he derived a substantial portion of his income" or if the defendant "was in the business of preparing or assisting in the preparation of tax returns." Rosario has a single sentence in her opening brief on this issue: "[Section] 2T1.4(b)(1)(A)(B) does not apply because Defendant Rosario was not accused of promoting fraudulent tax shelters or of actually regularly preparing or assisting in the preparation of the preparation [sic]." Appellants' Br. 25.

---

[2] Again, even if Rosario had not waived this objection, the District Court correctly applied § 2T1.4(b)(2). The application note describes sophisticated means as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. . . . Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means." U.S.S.G. § 2T1.4 application note 3. Rosario's scheme involved criminal activity within both the United States and the Dominican Republic, including wiring illegal proceeds to the Dominican Republic. The scheme involved multiple fraudulent businesses, a variety of bank accounts, and fraudulent tax returns. The scheme thus involved sophisticated means.

11

This argument is unavailing. The scheme was run through Rosario's tax preparation business—Rosario was indisputably in the business of preparing tax returns. She also derived a substantial portion of her income from the scheme, as the record reflects that she did not have any other significant source of income during this time period. The District Court did not err in applying this two-level enhancement.

## 2.     The Organizer or Leader Enhancement

Finally, Rosario argues that the District Court erred in finding that she was an organizer or leader under U.S.S.G. § 3B1.1(a) because: 1) she was only twenty years old when the conspiracy began; 2) three of the individuals that she recruited were involved in other tax fraud schemes; and 3) there is no evidence that she recruited Nunez. We review for clear error. *See Thung Van Huynh*, 884 F.3d at 165.

Section 3B1.1(a) provides for a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Factors to consider include:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 application note 4. "We have explained that to be considered an organizer or leader, the defendant must have exercised some degree of control over others involved in the commission of the offense." *United States v. Helbling*, 209 F.3d 226, 243 (3d Cir. 2000) (internal quotation marks and citation omitted).

12

The District Court concluded that Rosario was an organizer or leader of a criminal activity involving five or more participants. It rejected Rosario's argument that she was not an organizer or leader because there may be some other ultimate leader of a broader criminal enterprise. We agree. The evidence reflects that Rosario recruited Karla Pena, Sandra Javier, Jerry Villahermosa, Felix Mejia Reyes, and Yinaury Placencia. Moreover, Rosario "exercised some degree of control" over the activities of these other participants in the scheme by directing them to, *inter alia*, make wire transfers, pick up tax refund checks, and open bank accounts. *Thung Van Huynh*, 884 F.3d at 170 (quoting *Helbling*, 209 F.3d at 243). She (and Nunez) also controlled the stolen funds through their various accounts and paid the other participants in the scheme. We do not find that the District Court erred in applying a four-level aggravated role enhancement.

## IV.    CONCLUSION

For the reasons set forth above, we will affirm.

13